IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CLIFTON LEON WEBB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV268 |
| | ) | |
| THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, a body politic and corporate institution of the State of North Carolina, GENA J. CARTER, sued in her individual and official capacities; DARIUS DIXON, individually; and BEN TRIPLETT, individually; and UNNAMED OTHERS, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff, Clifton Leon Webb, brings this action against the Defendants, alleging violations of 42 U.S.C. § 2000e-2 *et seq.* ("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Before the Court is Defendants' Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2)[1], and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 6.) For the reasons stated below, the Court grants Defendants' motion.

On a motion to dismiss pursuant to Rule 12(b)(1), a defendant can challenge the Court's subject matter jurisdiction by contending either: (1) that, taking the facts alleged in the complaint as true, the complaint simply fails to allege facts upon which subject matter jurisdiction can be based; or (2) "that the jurisdictional allegations of the complaint [are] not

---

[1] Although Defendants state that they seek dismissal pursuant to Rule 12(b)(2), the Court finds no argument in Defendants' briefing which supports dismissal pursuant to Rule 12(b)(2).

true," in which case an evidentiary hearing is required. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The burden of proving subject matter jurisdiction rests with the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219.

On a motion to dismiss pursuant to Rule 12(b)(6) the moving party "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Markets, Inc. v. J. D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. at 662, 678-79 (2009).

Generally, on a 12(b)(6) motion to dismiss, a court cannot consider documents beyond the complaint without converting the motion into a motion for summary judgment. *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). However, the court can properly consider "documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). In this case, the Court considers the following documents ("EEOC Documents"): (i) EEOC Intake Questionnaire

2

with attachments; (ii) EEOC Charge of Discrimination; and (iii) EEOC Dismissal and Notice of Rights. Each document is referenced in, and attached to, the Complaint, and neither party challenges the authenticity of any document.

The Court will address Defendant's motion as it relates to each cause of action in Plaintiff's Complaint in the order in which it appears in the Complaint.

    *a.*     *Disparate Treatment Based on Race*

The University of North Carolina at Chapel Hill ("UNC-CH") contends that Plaintiff's Title VII claim of disparate treatment based on race should be dismissed pursuant to Rule 12(b)(1) because he failed to exhaust administrative remedies. (ECF No. 7 at 11.) Before a plaintiff files suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). A plaintiff's failure to exhaust administrative remedies deprives the court of subject matter jurisdiction over the claim. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). The EEOC charge "defines the scope of [plaintiff's] subsequent right to institute a civil suit" in federal court. *First Union Nat'l Bank*, 202 F.3d at 247. The claims in a plaintiff's federal court complaint must be "reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation." *Id.* "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis . . . and the formal litigation alleges discrimination on a separate basis." *Calvert Grp., Ltd.*, 551 F.3d at 300.

Here, Plaintiff was employed as a zone manager in UNC-CH's Facilities Services Division on January 8, 2007. (ECF No. 1 ¶ 21.) Following his termination by UNC-CH on

3

January 16, 2014, Plaintiff filed a Charge of Discrimination with the EEOC ("EEOC Charge") on May 22, 2014. (*Id.* ¶¶ 17, 21, 81; ECF No. 1-2.) Although Plaintiff's Complaint alleges that he filed an EEOC Charge "concerning . . . having been subjected to disparate treatment [by UNC-CH] because of his race as a black male" (ECF No. 1 ¶ 17), the EEOC Documents do not allege that Plaintiff was singled out because of his race. Plaintiff's EEOC Charge alleges that he:

> was retaliated against because of [his] engagement in the protected activity of serving on the Employee Forum which conducted investigations of the numerous illegal activities that went on in the housekeeping department, including inappropriate sexual relationships with subordinate employees and unfair treatment of Black employees and resulted in the removal of more than 10 management employees, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 1-2 at 2.) In his EEOC Intake Questionnaire and attachment Plaintiff stated, in part, that "[n]o other zone manager was investigated as I was;" "[a]ll managers would be girded. No other zone manager was dismissed by this method or during this period;" "my involvement [with the Employee Forum] was frowned upon due to my position as Zone Manager." (ECF No. 1-1 at 2, 5.)

There is no mention in any of Plaintiff's EEOC Documents that he suffered any discriminatory action based on his race. Moreover, in the boxes provided on the EEOC Charge form for the claimant to signify the type of discrimination alleged, Plaintiff checked only the "Retaliation" box and left the "Race" box unchecked. (*See* ECF No. 1-1 at 2.) Thus, not only does the plain language of Plaintiff's EEOC Documents fail to explicitly allege race discrimination, the retaliation allegations set forth by Plaintiff in his EEOC Documents are not reasonably related to the race discrimination allegation in Plaintiff's

4

Complaint. Nor would Plaintiff's race discrimination claim follow from a reasonable investigation of Plaintiff's EEOC retaliation claim. *See Calvert Grp., Ltd.*, 551 F.3d at 300 (explaining that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint" can be asserted in a subsequent lawsuit in federal court. (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996))).

Because Plaintiff's Title VII race discrimination claim exceeds the scope of his EEOC Charge, Plaintiff has not exhausted his administrative remedies with regard to this claim. The Court therefore lacks subject matter jurisdiction over Plaintiff's Title VII claim of disparate treatment based on race and, as a matter of law, UNC-CH is entitled to prevail on its Rule 12(b)(1) motion to dismiss this claim.[2]

b. *Retaliation Claim*

Plaintiff asserts that, because he engaged in the protected activity of reporting illegal employment practices at UNC-CH, he was subjected to "materially adverse actions" by UNC-CH, culminating in his termination. (ECF No. 1 ¶¶ 91-93.) UNC-CH moves to dismiss this claim based on Plaintiff's failure to allege sufficient facts to support this claim. (ECF No. 7 at 16-20.)

Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice [that is] made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

---

[2] UNC-CH also argues, in the alternative, for dismissal of Plaintiff's Title VII claim of disparate treatment based on race due to Plaintiff's failure to state a claim. (ECF No. 7 at 11, 13-16.) In light of the Court's conclusion that it lacks subject matter jurisdiction over this claim, the Court has no authority to address UNC-CH's Rule 12(b)(6) argument.

investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In order to establish a prima facie case of retaliation under Title VII, Plaintiff must allege that: "(1) he engaged in protected activity; (2) he suffered an adverse employment action at the hands of [his employer]; and (3) [the employer] took the adverse action because of the protected activity." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001).

Plaintiff's termination by UNC-CH on January 16, 2014 constituted an adverse employment action.[3] Plaintiff engaged in protected activity when he reported the alleged "sex trade" or "sex-for-hire" employment practices of the former UNC-CH Director of Housekeeping, Bill Burston ("Burston"), including Burston's alleged discriminatory practice of replacing African-American employees with Asian employees. (ECF No. 1 ¶¶ 27, 29, 34, 41.) Plaintiff also engaged in protected activity when, following Burston's termination by UNC-CH, Plaintiff testified at Burston's grievance hearing. (*Id.* ¶ 44.) However, the Complaint is devoid of factual allegations to support a causal link between UNC-CH's termination of Plaintiff and his engagement in the above-described protected activities.

To establish causation in the Title VII retaliation context, a plaintiff may either show: (1) that there is close temporal proximity between the adverse employment action and the protected activity; or (2) that in the absence of temporal proximity, there is "other relevant evidence," such as "recurring retaliatory animus during the intervening period." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

---

[3] The Fourth Circuit recognizes termination as an adverse employment action. *See King v. Rumsfeld, Inc.,* 328 F.3d 145, 151 (4th Cir. 2003) (finding that plaintiff's "termination indisputably constituted adverse employment action").

6

According to the Complaint, beginning in 2007 Plaintiff made numerous reports to various UNC-CH officials concerning Burston's allegedly unlawful employment practices. (*See* ECF No. 1 ¶¶ 27, 29, 34, 41.) Burston was then reassigned from the Housekeeping department and ultimately terminated by UNC-CH on September 28, 2011. (*Id.* ¶¶ 30, 40.) At the request of Carolyn Elfland ("Elfland"), UNC-CH's Associate Vice Chancellor for Facility Services, Plaintiff testified at Burston's grievance hearing in April 2012. (*Id.* ¶¶ 42, 44.) Plaintiff was not terminated, however, until January 16, 2014. (*Id.* ¶ 81.) The Court concludes that Plaintiff has failed to allege temporal proximity, given the 21-month period between April 2012, the last act of Plaintiff's protected activity, and the date of Plaintiff's termination. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (holding that a lengthy period of time between claimant's protected activity and the alleged adverse employment action negated any inference of a causal connection); *see also Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) *(per curiam)* (holding that three to four months between the protected activity and the adverse employment action is too long to establish causation by temporal proximity).

Plaintiff has also failed to allege "other relevant evidence" necessary to establish causation. Plaintiff's Complaint alleges that he experienced "various reprisal . . . as a result of having made reports," and that "having engaged in the protected activity, . . . UNC-CH through its managers intentionally caused Plaintiff to experience the adverse employment action of dismissal." (ECF No. 1 ¶¶ 91-92). Such conclusory statements, without

7

supporting factual allegations,[4] fall short of pleading the elements necessary to state a claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 678 (finding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief). Plaintiff has failed to allege sufficient facts to establish that UNC-CH terminated him because of his alleged protected activity. Thus, Plaintiff's Title VII claim against UNC-CH must be dismissed.

  c.  *Section 1983 Claims Against Defendants UNC-CH and Carter*

Defendants contend that Plaintiff's § 1983 claims, asserted against UNC-CH and Carter, are barred and should be dismissed because "these Defendants are not proper parties to Section 1983 claims and are entitled to Eleventh Amendment immunity." (ECF No. 7 at 7.) The Court agrees.

Section 1983 provides a cause of action "to remedy many deprivations of civil liberties, but it does not provide . . . a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). It is well settled that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71. UNC-CH is an alter ego of the State of North Carolina, and is therefore, not a person within the meaning of § 1983. *See Roberson v. Dale*, 464 F. Supp. 680, 689 (M.D.N.C. 1979) (holding that UNC-CH is an alter ego of the State).

---

[4] Although Plaintiff alleges that on July 1, 2013, he was reassigned "from being zone manager for UNC-CH's Zone 214 to being zone manager for UNC-CH's Zone 212," (ECF No. 1 ¶ 49), Plaintiff does not allege that this reassignment was accompanied by a reduction in work responsibilities or pay as evidence of causation. Moreover, this reassignment occurred more than 15 months after the last act of Plaintiff's protected activity.

8

Moreover, Plaintiff concedes that UNC-CH, as an alter ego of the state, is immune from money damages under § 1983. (ECF No. 11 at 10.) Accordingly, the Court grants UNC-CH's motion to dismiss Plaintiff's § 1983 claims against UNC-CH with respect to money damages. Further, to the extent that Plaintiff has sued Defendant Carter in her official capacity as Senior Director for Employee and Management Relations for UNC-CH's Office of Human Resources, the Court likewise grants the motion to dismiss Plaintiff's § 1983 claims against this defendant, with respect to money damages. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (finding that a suit against a state official in his or her official capacity should be treated as a suit against the State).

With respect to the injunctive relief sought by Plaintiff against UNC-CH and Defendant Carter, the Eleventh Amendment bars suits "in law or equity" against the State. U.S. Const. amend. XI. Likewise, a suit against a state official, "that is in fact a suit against a State, is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). Although a State may waive its Eleventh Amendment immunity, *Litman v. George Mason University*, 186 F.3d 544, 550 (4th Cir. 1999), "North Carolina law nowhere specifically provides for [such a] waiver." *Huang v. Bd. of Governors of Univ. of North Carolina*, 902 F.2d 1134, 1139 (4th Cir. 1990). Thus, UNC-CH and Defendant Carter are entitled to Eleventh Amendment immunity as to Plaintiff's claim for injunctive relief.

    d.    *Section 1983 Claims Against Defendants in their Individual Capacity*

Plaintiff also asserts § 1983 claims against Defendants, Carter, Dixon and Triplett in their individual capacities on the basis that "the alleged unlawful actions of the state officials

9

were not necessarily tied inextricably to their official duties." (ECF No. 11 at 11.) Defendants' argue, however, that, under *Martin v. Wood*, 772 F.3d 192 (4th Cir. 2014), § 1983 claims against a state official in his individual capacity must be dismissed when the allegations are directed at actions taken in the defendant's official capacity such that the State is the real party in interest. (ECF No. 7 at 8-10.) Thus, Defendants argue Eleventh Amendment immunity applies.

In order to identify the real party in interest, a court must "examine the substance of the claims stated in the complaint." [5] *Martin,* 772 F.3d at 196. In so doing, the Court finds that the actions described by Plaintiff in his Complaint were indeed inextricably tied to the individual Defendants' official positions at UNC-CH. [6] Specifically, Plaintiff complains of: (i) Dixon's July 1, 2013 act of reassignment of Plaintiff's position from housekeeping zone manager for UNC-CH's Zone 214 to housekeeping zone manager for Zone 212; (ii) Dixon, Triplett, and Carter's role in UNC-CH's investigation and survey of Plaintiff's job performance; (iii) Plaintiff's pre-termination mediation and meetings with Dixon, Triplett, and Carter; and (iv) his ultimate termination of employment on January 16, 2014 for "unacceptable personal conduct, directing aggressive and demeaning language toward staff and intimidation of staff." (ECF No. 1 ¶¶ 49-63, 65, 81; ECF No. 1-2.)

---

[5] *Martin* sets forth factors to be considered by a court in determining the real party in interest. 772 F.3d at 196. Those factors include: (1) whether the allegedly unlawful actions of the state officials were "tied inextricably to their official duties;" (2) whether the burden would have been borne by the State if the state officials had authorized the desired relief from the outset; (3) whether a judgment against the state officials would effectively serve as a judgment against the State; (4) whether the state official's actions were performed in order to further personal interests apart from the State's interests; and (5) whether the state official's committed *ultra vires* acts. *Id.*

[6] During the relevant time period, Carter served as UNC-CH's Senior Director for Employee and Management Relations; Dixon served as Director of Housekeeping, and Triplett served as Assistant Director of Housekeeping. (ECF No. 1 ¶¶ 3, 46-47.)

Apart from Plaintiff's blanket assertions that the individual Defendants' actions were "pretextual" and conducted in order to "build a case" against Plaintiff, there are no factual allegations in Plaintiff's Complaint to support these conclusory allegations. Nor are there any allegations that any of the individual Defendants acted in a manner which would further their personal interests as distinguished from that of UNC-CH. Rather, Plaintiff's Complaint demonstrates that the various alleged actions complained of were committed by Plaintiff's supervisors (Dixon and Triplett) and a member of UNC-CH's human resources department (Carter) as part of their official duties. The Court therefore concludes that the individual Defendants' actions, as alleged in the Complaint, were performed within the scope of their official capacities. As such, the Court grants Defendants' motion to dismiss the § 1983 claims against the individual Defendants, based on Eleventh Amendment immunity.

e.  *Section 1981 Claim*

Plaintiff alleges that Defendants terminated him based on his race, and/or in retaliation "for having engaged in protected activity," in violation of 42 U.S.C. § 1981. (ECF No. 1 ¶ 103.) Defendants move to dismiss Plaintiff's 1981 claim because "42 U.S.C. § 1983 is the exclusive federal remedy against the State for violation of rights guaranteed by Section 1981." (ECF No. 7 at 10.)

In *Jett v. Dallas Independent School District*, the Supreme Court held that, in a suit against a State or state actor, "§ 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981". 491 U.S. 701, 733 (1989). Plaintiff asserts, however, that "the Civil Rights Act of 1991 statutorily overruled *Jett* and, therefore, Plaintiff's claims under sections 1981 and 1983 can exist as independent causes of action." (ECF No. 11 at 13.)

11

Plaintiff further argues that "the Fourth Circuit appears not to have addressed this issue" and "in [*Dennis v. Cty. of Fairfax*, 55 F.3d 151 (4th Cir. 1995)], the Fourth Circuit never addressed or even reviewed the issue of whether the Civil Rights Act of 1991 overruled the holding in *Jett*." *Id.* Plaintiff is wrong on each of these points. As argued by Defendants, the clear wording of *Dennis* reveals that the Fourth Circuit did, in fact, address this issue, concluding that the Civil Rights Act of 1991 did not affect the holding in *Jett* that § 1983 is the sole remedy against the State for violation of the rights protected in § 1981. *Dennis*, 55 F.3d at 156 n.1. Plaintiff is thus precluded from pursuing an independent § 1981 cause of action against Defendants, and the Court, therefore, grants Defendants' motion to dismiss Plaintiff's § 1981 claim.

## CONCLUSION

For the reasons outlined herein, the Court will dismiss Plaintiff's Complaint in its entirety.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (ECF No. 6) is GRANTED and that Plaintiff's claims are DISMISSED WITH PREJUDICE. A Judgment dismissing this action will be entered contemporaneously with this Order.

This, the 30th day of March, 2016.

               /s/ Loretta C. Biggs
               United States District Judge